SAM MOYSES, Appellee, *vs.* MARGARET SCHENDORF *et al.* Appellants.

*Opinion filed February 19, 1909.*

1. CONFESSION OF JUDGMENT—*what question presented by motion to vacate and for leave to plead.* Upon motion to vacate a judgment by confession and for leave to plead, if the judgment was confessed by authority the question is not whether the judgment shall be set aside because of errors of law, but whether there exists any equitable reason for opening the judgment.

2. SAME—*general allegation of fraud does not justify opening judgment.* A judgment by confession on a note given to secure compliance with a contract to buy stock in a certain corporation will not be opened upon the mere general allegation, unsupported by other proof, that the representation that the business of the corporation was making money was false.

3. CONTRACTS—*when tender of property, or conveyance thereof, is unnecessary.* To put the vendee in a contract of sale in default no formal tender of the property, or a conveyance thereof, is necessary, if the vendee, before the time for performance, declares his intention not to perform the contract and refuses to perform.

4. SURETIES—*what is not such extension of time as releases a surety.* An alleged extension of time for carrying out a contract does not release a surety on a note given to secure compliance with the contract, where there was no definite agreement as to such extension and no consideration given for one.

5. DAMAGES—*when note is properly treated as liquidated damages.* A note given to secure the performance of a contract to buy stock in a corporation and which is to be returned to the maker if the contract is carried out, otherwise to become due and payable immediately, is properly treated as liquidated damages and not as a penalty.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. C. H. DONNELLY, Judge, presiding.

CLARK & CLARK, (CLYDE L. DAY, of counsel,) for appellants.

C. B. HAFFENBERG, and LOUIS GROLLMAN, (HERMAN FRANK, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

In vacation, after the October term, 1906, of the circuit court of Lake county, a judgment was entered by confession on a promissory note against appellants, and in favor of appellee, for $1515. At the next term appellants moved the court to stay execution, vacate the judgment and for leave to plead. A hearing having been had on affidavits and counter-affidavits, the circuit court overruled the motion and refused to vacate the judgment. An appeal was thereupon perfected to the Appellate Court for the Second District, where the finding of the circuit court was affirmed. This appeal was then prosecuted.

On a motion to vacate a judgment, confessed by authority, and for leave to plead, the question is not whether the judgment should be set aside because of errors of law, but whether there exists any equitable reason for opening the judgment to let in a defense. (*Knox* v. *Winsted Savings Bank,* 57 Ill. 331; *Mumford* v. *Tolman,* 157 id. 258; *Hall* v. *Jones,* 32 id. 38; *Pearce* v. *Miller,* 201 id. 188; *Rising*

v. *Brainard,* 36 id. 79; *Condon* v. *Besse,* 86 id. 159.)  See, however, on authority to confess judgment, *Whitney* v. *Bohlen,* 157 Ill. 571, and *Weber* v. *Powers,* 213 id. 370.

It appears that appellee and appellant Henry C. Schendorf entered into a written contract September 1, 1906, for the purchase by the latter of one hundred shares of the capital stock of the E. Goldstein Company (a corporation doing business in Chicago) for $8000, to be paid not later than November 1, 1906; that to secure the carrying out of this contract Schendorf and his wife, Margaret, executed and delivered to the appellee a promissory note of $1500, payable November 1, 1906.  The contract provided that if Schendorf paid for the stock according to the contract the note should be returned to him, otherwise it should become due and payable immediately.  This was the note upon which the judgment was entered.  The business of the E. Goldstein Company was a saloon and restaurant operated together.  By the terms of the contract Schendorf became manager of the restaurant at a salary of $25 per week, which position he was to hold until November, 1906.

Appellants contend that they were not liable on the note because no tender was made of the one hundred shares of stock contracted for and that no showing was made that appellee owned the stock.  When the time for performance has come the vendor must tender the property if it is susceptible of manual delivery, or a conveyance thereof if it is not, before the other party can be put in default.  The formal tender, however, may be rendered unnecessary if the vendee, before the time, declares his intention not to perform the agreement or refuses to perform it.  (*Osgood* v. *Skinner,* 211 Ill. 229.)  The proof is positive that Schendorf told appellee or his attorney that he would not take the stock, hence there was no necessity of making the formal tender.  On this record we do not think any question can be raised as to the ownership by the appellee of the stock in question.

The further contention is made that the contract, and the note given to secure compliance therewith, were procured by false and fraudulent representations. Schendorf states in his original affidavit that on or about August 25, 1906, as an inducement for him to buy the stock, appellee told him that his saloon and restaurant business was making money, and Schendorf swears that this statement was absolutely false and known to be false by appellee; that at that time the saloon and restaurant business was being run by the Goldstein Company at a loss of from $35 to $50 a day, and that said loss continued up to the time Schendorf gave up possession of said restaurant, about November 15, 1906. No details substantiating this statement were set forth in any of the affidavits, and we think it is apparent, as stated in the opinion of the Appellate Court, that Schendorf did not know as to this allegation of his own knowledge,—that it was based on hearsay, unsupported by direct proof. The said allegation in Schendorf's affidavit is the only proof offered in support of the fraud, and it is contradicted by the other affidavits. But even though there was no controversy on this question, this general allegation, unsupported by any other proof, was insufficient to justify the court in opening up the judgment with leave to plead. Schendorf, it is true, stated that while he was manager of the restaurant, from the first of September to about November 15, the entire business was losing from $35 to $50 a day. Even if that be true, it does not prove that the business had previously been conducted at a loss. Furthermore, Schendorf includes the saloon as well as the restaurant business, and except for a very small portion of the time he apparently had nothing to do with the saloon. We agree with the conclusion of the Appellate Court that, "taken altogether, Schendorf's affidavit means no more than that he had reason to believe that from undisclosed sources he will be able to show that the business was conducted at a loss."

The further contention is made that Margaret Schendorf signed the note as surety; that there was an extension of time for the carrying out of the contract, and that she was thereby released. This contention cannot be upheld. The note appears to have been signed by Margaret Schendorf as principal. But even conceding that the note, taken in connection with the agreement, showed that she was surety, (which we do not decide,) there is no satisfactory proof that there was an extension of time. Schendorf does not claim that he had a definite agreement as to such extension and it is very evident that there was no consideration given for one. On such a state of facts it cannot be held that the wife, even though she were surety, was released. *Crossman* v. *Wohlleben,* 90 Ill. 537; *English* v. *Landon,* 181 id. 614.

The further contention is made that the contract was rescinded by mutual agreement and that therefore the liability on the note was released. Appellee's attorney went to Schendorf several times and insisted on his paying for the stock, and it appears in the affidavits that Schendorf asked for more time in which to sell certain personal property on the farm in order to raise the money. Finally, about November 15, 1906, appellee's attorney said to Schendorf that he must either quit the business as manager of the restaurant and surrender the keys or take the stock and pay for it, and Schendorf then said he would quit the business and give up the keys, which he did at once. There was nothing said at this time to indicate that the note was to be canceled. The fair conclusion from this conversation as set out in the affidavits was, that he was only surrendering his position as manager of the restaurant by surrendering the keys and giving up the position. His conversations with appellee afterwards with reference to the note do not indicate, as contended by appellants, that appellee understood that the note was to be given up. We draw the contrary conclusion.

As we understand the appellants' position in their reply brief, they do not contend, as they did in the Appellate Court, that the amount of the note was a penalty and not liquidated damages. However that may be, we are of the opinion that the Appellate Court rightly held the note liquidated damages. *Gobble* v. *Linder,* 76 Ill. 157; *Peine* v. *Weber,* 47 id. 41.

We do not think the facts set up in Schendorf's affidavit, whether considered by itself or in connection with the other affidavits, showed that he had been induced to enter into the contract and sign the note in question by false and fraudulent representations made by appellee. There was, therefore, no error in denying the motion to open up the judgment with leave to plead.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*